MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

CARLOS PEREZ TORNADO, FRANCISCO
GOMEZ RAMIREZ, ISMAEL DOLORES
GONZAGA, and PRISCO NAJERA,
*individually and on behalf of others similarly
situated,*

|                                          |                                                     |
|------------------------------------------|-----------------------------------------------------|
|                            *Plaintiffs*, |                       **COMPLAINT**                  |
|                                          |                                                     |
|                            -against-     |          **COLLECTIVE ACTION UNDER**                |
|                                          |            **29 U.S.C. § 216(b)**                    |
| COURAGE TEAM INC.    (D/B/A PIG          |                                                     |
| HEAVEN) and NANCY LEE (A.K.A.            |                       **ECF Case**                  |
| HUIFONG LEE),                            |                                                     |
|                                          |                                                     |
|                            *Defendants.* |                                                     |

------------------------------------------------------X

Plaintiffs Carlos Perez Tornado, Francisco Gomez Ramirez, Ismael Dolores Gonzaga, and

Prisco Najera (collectively, "Plaintiffs"), individually and on behalf of others similarly situated,

by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and

belief, and as against Courage Team Inc. (d/b/a Pig Heaven), ("Defendant Corporation") and

Nancy Lee (a.k.a. Huifong Lee), ("Individual Defendant"), (collectively, "Defendants"), allege as

follows:

## NATURE OF ACTION

1.    Plaintiffs are former employees of Defendants Courage Team Inc. (d/b/a Pig Heaven)

and Nancy Lee (a.k.a. Huifong Lee).

2.    Defendants own, operate, or control an Asian restaurant, located at 1420 3rd Avenue New York, NY 10028 under the name "Pig Heaven".

3.    Upon information and belief, individual Defendant Nancy Lee (a.k.a. Huifong Lee), serve or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operates or operated the restaurant as a joint or unified enterprise.

4.    Plaintiffs were employees of Defendants.

5.    Plaintiffs were employed as delivery workers at the restaurant located at 1420 3rd Avenue New York, NY 10028.

6.    Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to taking out the garbage , storing and picking up inventory, making sauces, stocking deliveries, filling containers, arranging sodas, bringing items up from the basement, cleaning, filing bags for delivery, ripping apart and tying up cardboard boxes, stocking drinks into the  refrigerator and moving merchandise when deliveries arrived (hereafter the "non-tipped duties").

7.    At all times relevant to this Complaint, Plaintiffs worked for Defendants without appropriate minimum wage compensation for the hours that they worked.

8.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs at the straight rate for any hours they worked.

9.    Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.    Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

11.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them the lower tip-credit rate (which they still failed to do).

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work  without providing the minimum wage compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an Asian restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

19.    Plaintiff Carlos Perez Tornado ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in New York County, New York. Plaintiff Perez was employed by Defendants at Pig Heaven from approximately December 2014 until on or about April 29, 2018.

20.    Plaintiff Francisco Gomez Ramirez ("Plaintiff Gomez" or "Mr. Gomez") is an adult individual residing in Queens County, New York. Plaintiff Gomez was employed by Defendants at Pig Heaven from approximately May 2015 until on or about April 29, 2018.

21.    Plaintiff Ismael Dolores Gonzaga ("Plaintiff Dolores" or "Mr. Dolores") is an adult individual residing in Bronx County, New York. Plaintiff Dolores was employed by Defendants at Pig Heaven from approximately October 2010 until on or about April 29, 2018.

22.    Plaintiff Prisco Najera ("Plaintiff Najera" or "Mr. Najera") is an adult individual residing in New York County, New York. Plaintiff Najera was employed by Defendants at Pig Heaven from approximately December 2014 until on or about April 29, 2018.

*Defendants*

23.    At all relevant times, Defendants owned, operated, or controlled an Asian restaurant, located at 1420 3rd Avenue New York, NY 10028 under the name "Pig Heaven".

24.    Upon information and belief, Courage Team Inc. (d/b/a Pig Heaven) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1420 3rd Avenue New York, NY 10028.

25.    Defendant Nancy Lee (a.k.a. Huifong Lee) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nancy Lee (a.k.a. Huifong Lee) is sued individually in her capacity as owner, officer and/or agent of Defendant Corporation. Defendant Nancy Lee (a.k.a. Huifong Lee) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

26.    Defendants operate an Asian restaurant located in the Yorkville section of Manhattan in New York City.

27.    Individual Defendant, Nancy Lee (a.k.a. Huifong Lee), possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporation, and controls significant functions of Defendant Corporation.

28.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

29.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

30.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

31.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

32.    Upon information and belief, Individual Defendant Nancy Lee (a.k.a. Huifong Lee) operates Defendant Corporation as either an alter ego of herself and/or fails to operate Defendant Corporation as an entity legally separate and apart from herself, by among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)   defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)   transferring assets and debts freely as between all Defendants,

d)   operating Defendant Corporation for her own benefit as the sole or majority shareholder,

e)   operating Defendant Corporation for her own benefit and maintaining control over this corporation as a closed Corporation,

f)   intermingling assets and debts of her own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect her own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

33. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

34. In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

35. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

36. Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, the tipped workers spent over 20% of each shift performing the non-tipped duties described above.

37. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Carlos Perez Tornado*

38. Plaintiff Perez was employed by Defendants from approximately December 2014 until on or about April 29, 2018.

39. Defendants ostensibly employed Plaintiff Perez as a delivery worker.

40.    However, Plaintiff Perez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

41.    Although Plaintiff Perez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

42.    Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

43.    Plaintiff Perez's work duties required neither discretion nor independent judgment.

44.    From approximately December 2014 until on or about May 2017, Plaintiff Perez worked as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., 6 days a week (typically 36 hours per week).

45.    From approximately June 2017 until on or about April 29, 2018, Plaintiff Perez worked as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 30 hours per week).

46.    Throughout his employment, Defendants paid Plaintiff Perez his wages in cash.

47.    From approximately December 2014 until on or about May 2017, Defendants paid Plaintiff Perez a fixed salary of $120 per week.

48.    From approximately June 2017 until on or about April 28, 2018, Defendants paid Plaintiff Perez a fixed salary of $100 per week.

49.    Plaintiff Perez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

50.    For example, Defendants required Plaintiff Perez to work an additional 30 minutes past his scheduled departure time once or twice a week (mainly during winter), and did not pay him for the additional time he worked.

51.    Defendants never granted Plaintiff Perez any breaks or meal periods of any kind.

52.    Plaintiff Perez was never notified by Defendants that his tips were being included as an offset for wages.

53.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

54.    Plaintiff Perez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

55.    Defendants required Plaintiff Perez to sign a document, the contents of which he was not allowed to review in detail.

56.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

57.    Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

58.    Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

59.    Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including two helmets, five jackets, one bicycle, several sets of lights for the bicycle, two locks and three bells.

*Plaintiff Francisco Gomez Ramirez*

60.    Plaintiff Gomez was employed by Defendants from approximately May 2015 until on or about April 29, 2018.

61.    Defendants ostensibly employed Plaintiff Gomez as a delivery worker.

62.    However, Plaintiff Gomez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

63.    Although Plaintiff Gomez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

64.    Plaintiff Gomez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

65.    Plaintiff Gomez's work duties required neither discretion nor independent judgment.

66.    From approximately May 2015 until on or about April 29, 2018, Plaintiff Gomez worked as a delivery worker from approximately 4:30 p.m. until on or about 9:30 p.m., 4 days a week (and an extra day during summertime) and from approximately 4:30 p.m. until on or about 10:30 p.m., 1 day a week (Mondays) (typically 26 to 31 hours per week).

67.    Throughout his employment, Defendants paid Plaintiff Gomez his wages in cash.

68.    From approximately May 2015 until on or about April 29, 2018, Defendants paid Plaintiff Gomez a fixed salary of $20 per day ($120 per week during summertime and $100 per week the rest of the year).

69.    Defendants never granted Plaintiff Gomez any breaks or meal periods of any kind.

70.    Plaintiff Gomez was never notified by Defendants that his tips were being included as an offset for wages.

71.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gomez's wages.

72.    Plaintiff Gomez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

73.    Defendants required Plaintiff Gomez to sign a document, the contents of which he was not allowed to review in detail.

74.    In addition, in order to get paid, Plaintiff Gomez was required to sign a handwritten document in order to release his weekly pay.

75.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gomez regarding overtime and wages under the FLSA and NYLL.

76.    Defendants did not provide Plaintiff Gomez an accurate statement of wages, as required by NYLL 195(3).

77.    Defendants did not give any notice to Plaintiff Gomez, in English and in Spanish (Plaintiff Gomez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78.    Defendants required Plaintiff Gomez to purchase "tools of the trade" with his own funds—including one vest, one helmet, one bicycle, several sets of lights and maintenance and repairs.

*Plaintiff Ismael Dolores Gonzaga*

79.    Plaintiff Dolores was employed by Defendants from approximately October 2010 until on or about April 29, 2018.

80.    Defendants ostensibly employed Plaintiff Dolores as a delivery worker.

81.    However, Plaintiff Dolores was also required to spend a significant portion of his work day performing the non-tipped duties described above.

82.     Although Plaintiff Dolores ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

83.     Plaintiff Dolores regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

84.     Plaintiff Dolores's work duties required neither discretion nor independent judgment.

85.     From approximately May 2012 until on or about December 2017, Plaintiff Dolores worked as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., 6 days a week (typically 36 hours per week).

86.     From approximately January 2018 until on or about April 28, 2018, Plaintiff Dolores worked as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 30 hours per week).

87.     Throughout his employment, Defendants paid Plaintiff Dolores his wages in cash, except for his last two weeks which were paid by Defendants by check.

88.     From approximately May 2012 until on or about October 2013, Defendants paid Plaintiff Dolores a fixed salary of $60 per week.

89.     From approximately November 2013 until on or about December 2017, Defendants paid Plaintiff Dolores a fixed salary of $120 per week.

90.     From approximately January 2018 until on or about April 28, 2018, Defendants paid Plaintiff Dolores a fixed salary of $100 per week.

91.     Plaintiff Dolores's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

92.    For example, Defendants required Plaintiff Dolores to start working 30 minutes to 1 hour prior to his scheduled start time every day, and did not pay him for the additional time he worked.

93.    Defendants never granted Plaintiff Dolores any breaks or meal periods of any kind.

94.    Plaintiff Dolores was never notified by Defendants that his tips were being included as an offset for wages.

95.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Dolores's wages.

96.    Plaintiff Dolores was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

97.    Defendants required Plaintiff Dolores to sign a document, the contents of which he was not allowed to review in detail.

98.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Dolores regarding overtime and wages under the FLSA and NYLL.

99.    Defendants did not provide Plaintiff Dolores an accurate statement of wages, as required by NYLL 195(3).

100.    Defendants did not give any notice to Plaintiff Dolores, in English and in Spanish (Plaintiff Dolores's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101.    Defendants required Plaintiff Dolores to purchase "tools of the trade" with his own funds—including three helmets, two lights, ten jackets, three bicycles, black tires once a month, two locks per year, two chains and maintenance and repairs.

*Plaintiff Prisco Najera*

102.  Plaintiff Najera was employed by Defendants from approximately December 2014 until on or about April 29, 2018.

103.  Defendants ostensibly employed Plaintiff Najera as a delivery worker.

104.  However, Plaintiff Najera was also required to spend a significant portion of his work day performing the non-tipped duties described above.

105.  Although Plaintiff Najera ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

106.  Plaintiff Najera regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

107.  Plaintiff Najera's work duties required neither discretion nor independent judgment.

108.  From approximately December 2014 until on or about June 2017, Plaintiff Najera worked as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., 6 days a week (typically 36 hours per week).

109.  From approximately July 2017 until on or about October 2017, Plaintiff Najera worked as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., 4 days a week (typically 24 hours per week).

110.  From approximately October 2017 until on or about April 29, 2018, Plaintiff Najera worked as a delivery worker from approximately 4:00 p.m. until on or about 10:00 p.m., 5 days a week (typically 30 hours per week).

111.  Throughout his employment, Defendants paid Plaintiff Najera his wages in cash.

112.  From approximately December 2014 until on or about June 2017, Defendants paid Plaintiff Najera a fixed salary of $120 per week.

113. From approximately July 2017 until on or about October 2017, Defendants paid Plaintiff Najera a fixed salary of $80 per week.

114. From approximately October 2017 until on or about April 29, 2018, Defendants paid Plaintiff Najera a fixed salary of $100 per week.

115. Defendants never granted Plaintiff Najera any breaks or meal periods of any kind.

116. Plaintiff Najera was never notified by Defendants that his tips were being included as an offset for wages.

117. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Najera's wages.

118. Plaintiff Najera was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

119. Defendants required Plaintiff Najera to sign a document, the contents of which he was not allowed to review in detail.

120. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Najera regarding overtime and wages under the FLSA and NYLL.

121. Defendants did not provide Plaintiff Najera an accurate statement of wages, as required by NYLL 195(3).

122. Defendants did not give any notice to Plaintiff Najera, in English and in Spanish (Plaintiff Najera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

123. Defendants required Plaintiff Najera to purchase "tools of the trade" with his own funds—including two bicycles, one helmet, one vest and chain and lock.

*Defendants' General Employment Practices*

124.  At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work without paying them appropriate minimum wage as required by federal and state laws.

125.  Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked...

126.  Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

127.  Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

128.  Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

129.  These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

130.  Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

131.  These Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

132.   However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

133.   New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

134.   In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

135.   Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

136.   Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

137.   Defendants failed to maintain an accurate record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

138.   Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

139.  Defendants' time keeping system did not reflect the actual hours that some Plaintiffs worked.

140.  Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in order to release their wages.

141.  Plaintiffs were paid their wages in cash.

142.  Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

143.  Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

144.  Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

145.  Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

146.  Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the

number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

147.   Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

148.   Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

149.   At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage and willfully failing to keep records required by the FLSA.

150.   The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

151.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.  At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

153.  At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

154.  Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

155.  Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

156.  Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

157.  Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

158.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.  At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

160.  Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

161.  Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

162.  Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

163.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.  Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

165.  Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

166.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.  With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

168.  Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

169.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.  Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

171.  Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(i)    Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(j)    Awarding Plaintiffs damages for the amount of unpaid minimum wage, and for any improper deductions or credits taken against wages as applicable

(k)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(n)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(o)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(p)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       May 3, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
         Michael Faillace [MF-8436]
         60 East 42nd Street, Suite 4510
         New York, New York 10165
         Telephone: (212) 317-1200
         Facsimile: (212) 317-1620
         *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

May 1, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Prisco Najera

                                        Michael Faillace & Associates, P.C.
Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                           01 de mayo de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 1, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Ismael Dolores Gonzaga

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    01 de mayo de 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.
### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

May 1, 2018

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                         Francisco Gomez Ramirez

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:                     _____

Date / Fecha:                          May 1, 2018

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

——————

Faillace@employmentcompliance.com

May 1, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Carlos Perez Tornado _____

Legal Representative / Abogado:   Michael Faillace & Associates, P.C. _____

Signature / Firma:                _____

Date / Fecha:                     _____ 01 de mayo de 2018 _____

*Certified as a minority-owned business in the State of New York*